## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYAN ANDREW MEHL,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:17-cv-01437** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SCI FOREST, et al.,** | : | |
| **Respondents** | : | |

## MEMORANDUM

On August 14, 2017, pro se Petitioner Ryan Andrew Mehl ("Petitioner"), an inmate at the State Correctional Institution at Forest, Marienville, Pennsylvania ("SCI-Forest"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On October 26, 2017, the Court issued an Order directing Respondents to file a response to the petition. (Doc. No. 12.) Respondents subsequently filed a response on February 23, 2018. (Doc. No. 20.) On June 25, 2018, Petitioner filed a motion to appoint counsel. (Doc. No. 23.) This matter is ripe for disposition. For the reasons that follow, the petition will be dismissed.

## I.    STATEMENT OF THE CASE

### A.    Procedural History

In March of 2013, Petitioner was arrested for sexually assaulting a friend of his sister-in-law after the victim had passed out following a night of drinking. Commonwealth v. Mehl, 793 MDA 2016 (Pa. Super. Ct. Apr. 10, 2017). Petitioner was subsequently charged with rape of an unconscious person, sexual

assault, and two counts of indecent assault.  Id.  On January 24, 2014, a jury found

Petitioner guilty on one count of sexual assault and two counts of indecent assault.

Id.  The jury was unable to reach a verdict on a charge of rape.  Id.  On May 2,

2014, Petitioner was sentenced to a term of five to ten years' imprisonment for

sexual assault, and a concurrent term of one to two years' imprisonment for

indecent assault of an unconscious person.  Id.  The sentencing court also imposed

a consecutive period of two years' probation for the second indecent assault

charge.  Id.

Petitioner timely filed a direct appeal to the Superior Court of Pennsylvania

which affirmed his judgment of sentence on February 23, 2015.  Id.; see also

Commonwealth v. Mehl, No. 877 MDA 2014 (Pa. Super. Ct. Feb. 23, 2015).

Petitioner did not petition the Supreme Court for allowance of appeal.

Commonwealth v. Mehl, No. CP-67-CR-4500-2013; (Doc. No. 20-3 at 5.)

Thereafter, on December 23, 2015, Petitioner filed a pro se Post Conviction Relief

Act ("PCRA") petition asserting the ineffectiveness of trial counsel for failing to

file a pretrial suppression motion, failing to prepare for trial, and granting the judge

of the Court of Common Pleas of York County permission to enter the jury room

during deliberations.  Mehl, No. 793 MDA 2016.  Counsel was appointed and filed

an amended PCRA petition on February 29, 2016.  Id.  The PCRA court denied

Petitioner's PCRA petition on April 21, 2016.  Id.

On May 19, 2016, Petitioner appealed the denial of his PCRA petition with the Superior Court of Pennsylvania.  Id.  On April 10, 2017, the Superior Court affirmed the PCRA court's denial of the petition.  Id.  On May 10, 2017, Petitioner filed a petition for allowance of appeal to the Supreme Court of Pennsylvania which denied the allowance of appeal on October 3, 2017.  Commonwealth v. Mehl, No. 316 MAL 2017 (Pa. Oct. 3, 2017.)  Petitioner filed the instant petition for writ of habeas corpus on August 14, 2017.  (Doc. No. 1.)

### B.  Habeas Claims Presented

The Court construes Petitioner's habeas corpus petition as raising the following claims:

1. Whether the trial court erred when it denied Petitioner's pre-trial suppression motion to exclude statements made by Petitioner to the police;

2. Whether Petitioner's trial counsel was ineffective;

3. Whether Petitioner's Constitutional rights were violated because of prosecutorial misconduct; and

4. Whether Petitioner's Constitutional rights were violated when the trial judge entered the jury room during deliberation and engaged in ex parte communications with the jury.

(Doc. No. 1.)

## II.  STANDARD OF REVIEW

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.

3

_Preiser v. Rodriguez_, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." _Estelle v. McGuire_, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); _Estelle_, 502 U.S. at 67-68; _see also_ _Pulley v. Harris_, 465 U.S. 37, 41 (1984); _Johnson v. Rosemeyer_, 117 F.3d 104 (3d Cir. 1997).

## III.   DISCUSSION

It is first necessary to determine whether Petitioner's claims presented in his habeas petition are cognizable in a federal habeas proceeding and whether they have been exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default.

### A.   Exhaustion and Procedural Defaulted Claims, Grounds Three and Four

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. _See, e.g._, _Castille v. Peoples_, 489 U.S. 346, 351(1989); _Doctor v. Walters_, 96 F.3d 675,

678 (3d Cir. 1996), abrogated on other grounds by <u>Beard v. Kindler</u>, 558 U.S. 53 (2009); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). The petitioner has the burden of establishing that the exhaustion requirement has been met. <u>Ross v. Petsock</u>, 868 F.2d 639, 643 (3d Cir. 1989); <u>O'Halloran v. Ryan</u>, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists. <u>Christy v. Horn</u>, 115 F.3d 201, 206 (3d Cir. 1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. <u>Wenger v. Frank</u>, 266 F.3d 218, 223 (3d Cir. 2001); <u>Lines v. Larkins</u>, 208 F.3d 153, 160 (3d Cir. 2000); <u>see</u> <u>Teague v. Lane</u>, 489 U.S. 288, 297-

98 (1989).  Although deemed exhausted, such claims are considered procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice."  See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750; Caswell v. Ryan, 953 F.2d 853, 857, 861-62 (3d Cir. 1992).  To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure.  Coleman, 501 U.S. at 750.  To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice."  "Prejudice" must be something that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Id. at 494.  Alternatively, a federal court may excuse a procedural default when the petitioner

establishes that failure to review the claim will result in a fundamental miscarriage of justice.  See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

Petitioner raises prosecutorial and judicial misconduct claims in grounds three and four of his habeas petition.  (Doc. No. 1.)  Specifically, Petitioner claims that the prosecution failed to present favorable evidence to him and that Petitioner was prejudiced when the trial judge entered the jury room during deliberations.  (Id.)  To comply with the exhaustion requirement of 28 U.S.C. § 2254, Petitioner was required to present all of his federal habeas claims to the state courts in his direct appeal or in his PCRA proceeding.  Because Petitioner has not raised either of these claims with the state courts prior to presenting these claims in federal court, the Court must now determine whether Petition has any other available state court remedy through which he can present his unexhausted claims.

Under the PCRA, a petitioner may bring a second PCRA petition only if it is filed within one year of the date the judgment becomes final unless the petition alleges facts that meet one of the requirements set forth in § 9545(b)(1), which Petitioner has not.  See 42 Pa. Cons. Stat. § 9545(b)(1).  The Supreme Court of Pennsylvania has held that the PCRA's timeliness requirements are mandatory and jurisdictional in nature; thus, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an

untimely manner.  See, e.g., Commonwealth v. Murray, 753 A.2d 201, 202-03 (Pa. 2000).

Consequently, Petitioner is precluded from presenting his unexhausted claim in a second PCRA petition based on the time limitations set forth in the PCRA. These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review.  See Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).  As set forth above, this Court may not review Petitioner's defaulted claims unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. McCandless, 172 F.3d at 260.  Petitioner neither argues cause and prejudice, nor the existence of a fundamental miscarriage of justice in his petition.  Consequently, he is not entitled to habeas corpus relief as to grounds three and four.

### B.    Merits of Grounds One and Two

Once a court has determined that the exhaustion requirement is met, and therefore that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). AEDPA places the burden on the petitioner to make this showing. Williams v. Taylor, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of § 2254 have independent meaning. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court. Williams, 529 U.S. at 405. This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Wilkerson v. Klem, 412 F.3d 449, 452 (3d Cir. 2005) (quoting Williams, 529 U.S. at 406). Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts[ ] of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For the purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous."

Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal citations omitted).

"Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76 (quoting Williams, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

Turning to § 2254(d)(2), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (citing Rice v. Collins, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'")); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Further, as with § 2254(d)(1), the evidence against which a federal court measures the reasonableness of the state court's factual findings is

the record evidence at the time of the state court's adjudication. Rountree, 640 F.3d at 538.

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 562 U.S. 86, 102 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." Id. Further, it was designed to be difficult "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez, 566 U.S. at 9.

Finally, AEDPA scrutiny is applicable only if the state court adjudicated the petitioner's claims "on the merits." 28 U.S.C. § 2254(d); see Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). Further, an "adjudication on the merits" can occur at any level of state court. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009). However, "to qualify as an 'adjudication on the merits,' the state

court decision must finally resolve the claim. This means that the state court's resolution of the claim must have preclusive effect." Id. (citing Rompilla, 355 F.3d at 247 (quoting Sellan, 261 F.3d at 311)). Where a state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential AEDPA standards do not apply, and the federal court must exercise de novo review over pure legal questions and mixed questions of law and fact. Simmons, 581 F.3d at 165 (citing Appel, 250 F.3d at 210). However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence. Id.

### i. Ground One: Whether the Trial Court Erred in Denying Suppression of Statements

Petitioner maintains that the trial court erred in failing to suppress statements he made to an investigating police officer in violation of Miranda.[1] (Doc. No. 1.) Respondent contends that this claim was adjudicated on the merits and that the state court's decision was not contrary to, or did not involve an unreasonable application of, clearly established Federal law and that the state court's determination of this claim was based on a reasonable determination of the facts in light of the evidence. (Doc. No. 20 at 17.) A suppression hearing was held before the trial court where the investigating officer testified. The officer provided that he spoke with Petitioner on the telephone and that Petitioner, while in a drug

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

rehabilitation facility in Maryland, stated that he "wanted the interview, he wanted to give his side of the story." <u>Mehl</u>, 877 MDA 2014; (Doc. No. 20-2 at 157). The investigating officer drove to the rehabilitation facility where Petitioner signed a form to allow the investigating officer to enter the rehabilitation facility. (<u>Id.</u>) The investigating officer testified that before the interview began, he informed Petitioner that "he wasn't under arrest, he could get up and – talk to me or get up and leave at any time." (<u>Id.</u>) The officer also asked Petitioner if "he [felt] like he was under arrest, and [Petitioner] said no." (<u>Id.</u>) The officer further testified that his conversation with Petitioner was "just two men sitting and talking[,]" and that Petitioner appeared to be "relaxed." (<u>Id.</u>)

The trial court found that based on the totality of the circumstances, the interview of Petitioner was not a custodial interrogation and the Superior Court affirmed. (<u>Id.</u>) In reaching this determination, the state courts concluded that the interview was initiated by Petitioner; before the interview began, the officer told Petitioner that he was not under arrest and could leave at any time; that Petitioner stated that he did not feel that he was under arrest; and that Petitioner spoke in a relaxed manner. (<u>Id.</u>) Therefore, the state courts found that <u>Miranda</u> warnings were not required and the trial court did not err in not suppressing the statements. (<u>Id.</u>)

Miranda serves to exclude from trial statements made by a defendant during a custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). Thus, an individual's Miranda rights apply only when that individual is "in custody" and subjected to "interrogation." See Illinois v. Perkins, 496 U.S. 292, 296 (1990). Determining "whether an individual is in custody, the ultimate inquiry is 'whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" Reinert v. Larkins, 379 F.3d 76, 86 (3d Cir. 2004) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation omitted)). When the individual has not been openly arrested when the statements are made, "'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" Id. (quoting Steigler v. Anderson, 496 F.2d 793, 799 (3d Cir. 1974) (internal quotation omitted)). "Interrogation" for Miranda purposes includes those words and actions "that the police should know are reasonably likely to elicit an incriminating response." See Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Here, Petitioner was not subjected to the type of custodial interrogation that triggers Miranda. Petitioner was not under arrest. Moreover, it was Petitioner who initiated the interview. Moreover, there is no evidence to suggest that Petitioner was restrained in any way from breaking off the encounter, let alone restrained to a

degree associated with a formal arrest.  See LaBrake v. Stowitzky, 2009 WL 2854747, at *10 (E.D. Pa. Sept. 3, 2009).  This Court does not find that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Further, it was not based on an unreasonable determination of the facts in light of the evidence.  Accordingly this claim will be dismissed as it fails on the merits.

### ii.     Ground Two: Ineffective Assistance of Trial Counsel

Petitioner raises three exhausted[2] ineffective assistance of trial counsel claims for: (1) failing to meet with him and discuss trial strategy; (2) failing to adequately discuss the waiver of his right to testify; and (3) failing to object when the court entered the jury room during deliberations.  (Doc. No. 1); see also Mehl, 793 MDA 2016.  To establish ineffective assistance of counsel, the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), explained that a petitioner must show that counsel's performance was deficient.  Id. at 688.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390 - 91 (2000).  Second, the petitioner must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant

---

[2] As noted by Respondent, while Petitioner raised several other ineffective assistance of trial counsel claims, all but the following three claims before the Court were procedurally defaulted when Petitioner failed to raise them in his PCRA petition.

of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Because the Strickland standard is a clearly established federal law, Taylor v. Horn, 504 F.3d 416, 430 (3d Cir. 2007), the question for a habeas court is whether the state court's review of a petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of, the Strickland standard, Siehl v. Grace, 561 F.3d 189, 196 (3d Cir. 2009).

Moreover, the Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir.1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, his claim fails. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may

address the performance and prejudice components in any order, but need not

address both if Mr. Foster fails to make a sufficient showing of one .").

### a. Trial Counsel's Failure to Meet or Communicate with Petitioner

Petitioner's first claim is that his counsel was ineffective for failing to meet

or communicate with him prior to trial.  (Doc. No. 1.)  In addressing this issue, the

Superior Court, in reviewing the PCRA court's conclusions, provided the

following:

> Here, the PCRA court concluded that [Petitioner] failed
> to meet his burden of establishing counsel's
> ineffectiveness.  The [PCRA] court noted trial counsel
> testified that he spoke with [Petitioner] several times
> before trial.  Our review of the PCRA hearing testimony
> supports this finding.  Trial counsel testified he spoke
> with [Petitioner] "at least once on the phone prior to the
> pre-trial conference, at the pre-trial conference, the one
> time in our office [in October 2013], and at least one
> other time on the telephone between that October date
> and trial as well as prior to trial."  Although counsel
> acknowledged he probably never returned any messages
> [Petitioner] may have left him, he stated, "I talked to him
> when he caught me in the office."  With regard to trial
> strategy, counsel explained [Petitioner's] version of the
> events was consistent during their conversations, in that
> [Petitioner] "admitted to the [sexual] conduct but not to
> the criminality."  This Court has previously found a
> challenge to counsel's stewardship based solely on the
> length and frequency of counsel's consultations with the
> defendant does not support a finding of ineffectiveness.
> See Commonwealth v. Johnson, 51 A.3d 237, 244 (Pa.
> Super. 2012) (en banc) (finding that although "more
> contact may have been advisable," in preparation for
> defendant's first-degree murder trial, the attorney's

contact "allowed him to present a cogent trial strategy."), appeal denied, 63 A.3d 1245 (Pa. 2013). Accordingly, [Petitioner's] claim has no arguable merit.

Furthermore, we find [Petitioner] has failed to establish he was prejudiced by counsel's purported lack of contact. Indeed, while [Petitioner] claims the lack of communication with counsel prevented him from "providing critical, exculpatory evidence[,]" he fails to identify this evidence or explain how the outcome of the trial would have been different.

Mehl, 793 MDA 2016; (Doc. No. 20-3 at 133-34.)

In reviewing this claim, Petitioner offers nothing more than an unsupported assertion of ineffective assistance of counsel. The PCRA court determined that trial counsel met with Petitioner several times before trial. Moreover, Petitioner has not presented any evidence demonstrating how he was prejudiced by not meeting with counsel more frequently. Prejudice requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687. Here, Petitioner has not established that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Consequently, this claim will be dismissed.

### b. Trial Counsel's Failure to Adequately Explain to Petitioner his Right to Testify

Petitioner's second claim of ineffective assistance of trial counsel is that his counsel failed to adequately discuss Petitioner's right to testify prior to advising

him not to testify.  (Doc. No. 1.)  In reviewing this claim, the Superior Court

quoted from the trial court's colloquy regarding Petitioner's decision not to testify

after Petitioner originally indicated he wanted to testify.  <u>Mehl</u>, 792 MDA 2016;

(Doc. No. 20-3 at 136).  Prior to this, trial counsel asked for a brief recess to

discuss this issue with Petitioner:

> THE COURT: All right, [Petitioner], did you have enough time to consider the decision about whether you wish to testify or not?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: And what do you want to do?
>
> [PETITIONER]: I'm choosing not to testify, I believe the facts are out there.
>
> THE COURT: All right, (sic) do you have any question about your rights in this regard?
>
> [PETITIONER] No, Your Honor.
>
> THE COURT: The Court finds that [Petitioner] has knowingly, voluntarily and intelligently elected not to testify in this matter.

(<u>Id.</u>)

The Superior Court concluded that the trial court's colloquy demonstrated

that Petitioner's decision not to testify was his own, and made after adequate

consultation with his trial counsel.  (<u>Id.</u>)  Additionally, the Superior Court noted

that trial counsel provided a "reasonable basis for his advice [to Petitioner], stating

he believed [Petitioner's] testimony would harm a legitimate appellate issue, and he feared [Petitioner's] attitude might not be well received by the jury." (Id.) The Superior Court also provided that while Petitioner claimed that the jury "did not hear his 'factual testimony,' the jury did hear, through his statement to the police investigator, that [Petitioner] believed the sexual contact was consensual, and initiated by the victim." (Id.)

Upon review of the record, this Court concludes that the disposition of Petitioner's instant claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The Court finds that counsel's advice to Petitioner was reasonable and that Petitioner has failed to prove that he suffered prejudice. Accordingly, the state courts' finding that trial counsel did not provide ineffective assistance was not an unreasonable application of federal law and Petitioner is not entitled to habeas relief on this claim.

### c. Trial Counsel's Failure to Object to the Trial Court Entering the Jury Room During Deliberations

Petitioner's final ineffective assistance of counsel claim is for trial counsel's failure to object to the trial court entering the jury room during deliberations.

(Doc. No. 1.)  In finding that any objection by counsel on this issue would have

been meritless, the Superior Court provided the following:

> During deliberations, the trial court received a note from
> the jury indicating that they were "having difficulty with
> one of the charges" and asking the court how to proceed.
> The court provided further instructions in the courtroom,
> and then sent the jury back to continue deliberations.
> Later, the jury sent another note explaining they were
> "hung" on one of the charges, and had made no further
> progress.  At that point, the trial court stated the
> following to counsel:
>
> > I'm going to have them come out and take the
> > verdict on the charges that we have reached a
> > decision on, and I will first make an inquiry if
> > there is anything else that the Court can provide to
> > them that may assist them, or if they need more
> > time.  But before I do that, with the consent of both
> > counsel, I'm going to briefly stick my head [in] the
> > jury room to make sure that they've completed the
> > verdict slip for the three charges on which they've
> > reached a verdict, and that they've signed all 12
> > signatures to the verdict slip as required under the
> > procedure.
>
> The court asked both prosecution and defense counsel if
> that procedure was "okay" with them, to which they both
> responded, "yes, Your Honor."  Shortly thereafter, the
> jury returned with the verdict.  At the PCRA hearing,
> trial counsel testified that he could not recall if
> [Petitioner] was in the courtroom during that exchange.

Mehl, 792 MDA 2016; (Doc. No. 20-3 at 138-39.)

In reaching its conclusion that any objection would have been meritless, the

Superior Court reasoned that the "interaction between the trial court and the jury,

after the jury indicated they were unable to reach a verdict on one count, appears to have been only administrative, that is, to ensure the jurors had signed the verdict slip." (Id. at 140.) Regardless of whether or not trial counsel was ineffective for failing to object to the trial court's ex parte communication with the jury, this Court finds that Petitioner has failed to show that trial counsel's ineffectiveness was prejudicial; that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

As discussed by the Superior Court, the interaction between the trial court and the jury was to ensure that the jurors signed the verdict slip, nothing more. Mehl, 792 MDA 2016; (Doc. No. 20-3 at 138-40.) There is no evidence that the trial court's limited communication with the jury was anything other than administrative in nature, or that the jury was influenced by the trial court. This fact is confirmed by the trial court's own statement after speaking with the jurors that it was a "good thing that [the trial court] did that because [the juroros] need[ed] to complete [the verdict slip]." (Id. at 140.) Petitioner fails to establish that there is a reasonable probability that but for counsel's actions, the result of the proceeding would have been different. Consequently, this claim will be dismissed.

## IV.   MOTION TO APPOINT COUNSEL

Also pending before the Court is Petitioner's motion to appoint counsel. (Doc. No. 23.)  Petitioner avers that he has pre-existing mental health and learning disorders, including ADHD/ADD, anxiety, depression, bi-polar, and poly-substance abuse.  (Id.)  While prisoners have no constitutional or statutory rights to appointment of counsel in federal habeas corpus proceedings, Coleman, 501 U.S. at 752, the court has broad discretionary power to appoint counsel to a financially eligible habeas petitioner if "the interests of justice so require."  See 18 U.S.C. § 3006A(a)(2);[3] see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).  The United States Court of Appeals for the Third Circuit has stated that appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."  Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the Court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the petitioner's case has some arguable merit in fact and law.  Montgomery, 294 F.3d

---

[3] Any person seeking relief under 28 U.S.C. §§ 2241, 2254 or 2255 may be provided counsel, "whenever the United States magistrate or the court determines that the interests of justice so require" and such person is "financially eligible."  18 U.S.C. § 3006A(a)(2) (1996).

at 499.[4]  Here, Petitioner fails to set forth circumstances warranting appointment of counsel.  See Tabron, 6 F.3d at 155-56.  Foremost, the Court notes that Petitioner's petition lacks merit and is being dismissed.  Also, in observing the record, Petitioner has demonstrated the ability to present comprehensible arguments and the claims in the habeas petition do not present complex legal or factual issues.  Moreover, this Court's duty to construe pro se pleadings liberally, Haines v. Kerner, 404 U.S. 519 (1972), coupled with Petitioner's apparent ability to litigate this action, militate against the appointment of counsel at this time.  Accordingly, Petitioner's motion for appointment of counsel will be denied.

## V.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).  In

_____

[4] If a petitioner overcomes this threshold hurdle, courts examine additional factors such as the claimant's ability to present his own case and the difficulty of particular legal issues.  See Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993) (setting forth a list of factors).

the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable. As such, no COA will issue.

## VI.  CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), will be denied and a COA will not issue. An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 20, 2018